

No CV-30

Related DOJ

1  Lang Yu, Plaintiff pro se
2  100 Carrer de Mallorca, Barcelona 08029 Spain
3  Tel. +86-13870557350, email: 563907914@qq.com

4  IN THE UNITED STATES FEDERAL COURT
5  CENTRAL DISTRICT OF CALIFORNIA: SOUTHERN DIVISION SANTA ANA

6  _____     2:25-cv-10366-MRA-AJR
7  LANG YU,                      )    COMPLAINT
8            Plaintiff,          )    JURY DEMANDED
9       Against                  )
10 U.S. MINT, US CUSTOMS AND BORDER )
11 PROTECTION, a div. of US DEPT. OF HOMELAND )
12 SECURITY, PETE R. FLORES and LARRY )
13 GOLDBERG,                     )
14            Defendants.        )
15 _____
16

17 Plaintiff for his complaint alleges and sets forth as follows:

18     1.  Plaintiff is seeking damages from seizure by the US authorities, Mint and
19 Customs, in tandem, of 9 cases of United States coins, such as dimes, quarters etc.)
20 shipped from Hong Kong to Long Beach, California that were seized and detained at the
21 point of entry on the false suspicion that they are forgeries. The coins were shipped by
22 the partners to the transaction, Plaintiff and his co-partner Mr. **Billy Xu**, who died shortly
23 after the seizure, at the time of Corona, from Corona. The U.S. Government took the
24 coins and didn't make any application permitting it to retain the coins.

25

26

27               The Parties

1

2. Plaintiff is a respected and well esteemed Chinese business man residing in China, and involved in many international transactions, none of which ever were subject to any police investigation. As a side business, for many years Plaintiff and his partner Billy Xu (an American citizen and resident of CA, deceased) purchased US coins found in Chinese recycling factories where American waste and scarp metals are sent for disposal or recycling. In the process many coins are found as well as other valuables. Plaintiff's address is 100 Carrer de Mallorca, Barcelona, 08029 Spain, Tel. +86-13870557350, email: 563907914@qq.com.

3. Defendant US Mint coins American coins and launches them into the public for use as currency. It used to operate a redemption program whereby dealers brought the coins to its facilities and after inspection, the Mint pays its face value and melts the coins to make new coins. The program has been suspended, on and off, but it is still possible to redeem coins by using the Coinstar machines at supermarkets such as Walmart. The Mint's address is 801 9th Street, NW, Washington, DC 20220.

4. The US Customs inspects all goods entering the country from overseas, it levies taxes and tariffs on imports and it inspects shipments for contraband. It works closely as the Mint's agents at the point of entry to stop coin shipments from China at the orders received from the Mint. The address is Office of the Executive Secretary MS 0525 Department of Homeland Security, 2707 Martin Luther King Jr Ave SE Washington, DC 20528-0525. Tel. 202-406-9330, email: private.sector@dhs.gov.

5. Defendant Pete R. Flores, sued in his official and personal capacity, Acting Commissioner for U.S. Customs and Border Protection (CBP) is responsible for all seizure activities in the ports of entry. Address is Office of Chief Counsel U.S. Customs and Border Protection, 1300 Pennsylvania Avenue, Suite 4.4-B Washington, D.C. 20229, Email: cbpserviceintake@cbp.dhs.gov.

6. Defendant Larry Goldberg is an individual residing in Los Angeles, who portrays himself as an expert in rare and antique coins and other collectors' numismatics. Upon information and belief, he tried to import coins from Chinese factories. He is used by the Mint and Customs to supply them with post-seizure "probable cause", by writing notes that coins brought to him for an eye inspection are suspected as forgeries. His address is c/o GOLDBERG COINS & COLLECTIBLES INC., 11400 W. Olympic Blvd., Suite 800, Los Angeles, CA 90064, tel. 310-551-2646, email: info@goldbergcoins.com. His opinions are quack opinions since no one can tell if a coin is forged just by looking at it alone, without testing it for metallurgical composition.

### Jurisdiction and Venue

7. Jurisdiction is based on 8 U.S. Code § 1346 Rule 14 (g) of the Federal Rules of Criminal Procedure and Bivens. As between Plaintiff and Goldberg, in addition to him being a necessary party, and supplemental jurisdiction, also diversity exists.

8. The jurisdiction under 14 (g) arises since there is no other venue, forum and proceeding where Plaintiff can raise his claims. The Government chose to take the property sent to Billy XU and took no action, i.e. no motion was made for the right to retain or hold the coins, or dispose of them in any way, and no motion was made to forfeit the coins. Moreover, the Government did not file any criminal charges for forgery or for illegal imports into the USA, and more than reasonable time has passed, and the |investigation" was closed.

9. Venue is proper in Los Angeles since it is the county where the coins were seized without probable cause by the Mint and Customs, and it is the county of defendant Goldberg's business and dwelling. Plaintiff believes that secret warrants were issued in Los Angeles against Bily XU, and that the US Secret Service was also involved in picking this particular shipment for a Customs and Mint seizure.

### Facts

10. On or around January 9, 2020 Plaintiff and his partner arranged a shipping to Long Beach, CA via TFI Forwarding (HK) Co Ltd comprising of 9 cases of coins, 6,419 kg of Coins, declared valued $132,000, departing HK on January 21, 2020, ETA Long Beach on Feb,3 2020 with Consignee (recipient) Billy Xu handling the transaction

3

1  on the American side via DEROKK COLLECTION INC. of 16364 SUMMERSHADE
2  DR., LA MIRADA, CA. 90638, U.S.A., tel.: (714) 882 0660, (214) 642 9458).
3
4  11. Plaintiff and his partner Xu, complied with all Hong Kong requirements and
5  procedure and made a declaration pursuant to HK "Cross Boundary Movement of
6  Physical Currency and Nearer Negotiable Instruments, Ordinance Chapter 629", known
7  as CBNI Declaration (Currency and Bearer Negotiable Instruments Decl.), CFD Ref.
8  S190829/026/9/0, Bill of Lading 1909LBC002, Container OOLU6444545, dated
9  8/29/2019.
10
11  12. On or about Feb. 3, 2020, upon arrival at the port of Long Beach the coins were
12  seized. As Customs officials are instructed to take samples to defendant Larry Goldberg
13  for inspection, it is believed that upon looking at the samples he said they are forged, as
14  he routinely did in many cases beforehand.
15
16  13. In order to fight the escalating cost of living and to provide for his family,
17  Plaintiff started importing from a recycling factory in China U.S. coins that are saved
18  from dumpster and metal recycling shipments to be redeemed in banks and in coin
19  collecting machines.
20
21  14. THE US Mint declared an "unofficial war" against the importers from China and
22  employed agents of the Secret Service and US Customs to intercept and seize the coins,
23  not just from Plaintiff, but from many other importers (who do much bigger business this
24  way), always using the false and unsupported claim that the coins are "forged" in China
25  and therefore cannot be redeemed for cash in the US.
26
27  15. In all the operations, raids, seizures and warrant applications the US Government
28  never set forth what probable cause it had to suspect that the coins were forged. Although
29  those affected invited the US Mint and its agent to visit China and take a look at the
30  recycling factory there and how the scrap metals are separated, and processed, the US has
31  never done so.
32

16. In one previous case the US admitted that the seized coins were actually melted by the Mint and used to produce new and fresh American coins, which they would never do if the metallurgical composition was not identical to the US coins components. Also, it would be immoral and unwise for the Mints to use counterfeit money for new coins as the monies could be considered 'blood money', similar in ways seized narcotics are NOT being refined for medical use. They filed an expert report which was ludicrous on its base and the Judge in Philadelphia did not believe it. Thereafter other seizures involving same importer (Wealthy Max) the U.S. admitted the seizures were unfounded in evidence and paid in full the value of the coins.

17. In a case in Oregon ("5 Crates") the shipment was seized in Los Angeles port and taken to a private competitor, Mr. Lawrence S. Goldberg to "certify" based on visual inspection that the coins are forged. That competitor had an interest to eliminate his competitors and dominate the market. It remains to be seen the extent of his collaboration with the US, and what kind of Confidential and/or anonymous tips he gave the US agents.

18. Despite efforts of the US CBP and Homeland Security since 2008 to prove that there is an industry of forging coins in China that is abusing the US Mint Redemption Program, to date all coins that were seized and tested were proved to be genuine and originating from the US Mint. See the Report of the OIG from 2010 after a 21- month long investigation (explained hereafter), and the two related cases in Pennsylvania "**One Black Porsche**" and "**Wealthy Max**" (explained at length hereafter).

19. A similar campaign by the US agents intended to stop the redemption of coins arriving from Chinese dumping yards at the US Mint has failed. In 2015 US agents filed a case in NJ (which was later transferred to Philadelphia) seeking civil forfeiture of similar coins valued between $5.5-$6 million. See **US v. One 2014 Black Porsche**, Index No. **2:15-cv-05814-JS.**

20. The US claimed the same arguments in that case, that the coins were forged, that they did not originate from the US Mint, and that "all of the coins appeared to be

5

corroded (having a greenish-brown patina) and mechanically deformed and/or chipped" (Compl. ¶36). They also argued that "clad coins can be reversed engineered" (Compl. ¶38), and that the "level of detail needed to make them appear genuine would be much lower" (Compl. ¶39). In ¶46 of the Complaint it was alleged that CBP laboratory analysis found "aluminum and silicon which are not found in genuine US coins".

21. However, other than speculations about a possibility of reverse engineering and the same color of corrosion, the US Gov't did not provide any evidence that the coins were indeed not genuinely originated from the US Mint.

22. The defendants submitted an expert report of Mr. Richard Baron who is an expert in forensic engineering and chemical compositional testing who negated all the speculations of the US Gov't (Docket #30). Mr. Baron explained that "the detection of aluminum and silicon during chemical analysis is not uncommon, since such elements are very abundant in nature. The detection of such elements in metallic objects that have been mutilated would even be expected, either through the transfer of these elements from contact against other materials during the scrapping (or recycling) process or from exposure to the environment (e.g., soil)".

23. Also, Mr. Baron explained that the "analytical techniques employed" were not disclosed, and there was no information whether the sampled coins from the block of samples originally sent to the lab, actually represented the entire block, or cherrypicked items.

24. As to the allegation that the coins exhibited a "greenish-brown patina", the expert explained that this is exactly what is expected from old coins composed of 75% copper and 25% nickel: "the described patina exhibited by the coins is typical for copper rich materials and is not necessarily an indication that the subject coins were intentionally exposed to chemicals in order to mask their true appearance".

25. A hearing was conducted before the Hon. Judge Juan Sanchez in the Eastern District of Pennsylvania on July 14, 2015 and a week later on July 21, 2015 the Government notified it was withdrawing its complaint and the entire case was dismissed with prejudice.

26. At the hearing the US Attorney Zack Intrater admitted several times that many of the allegations in the complaint were false or baseless. See for example in Page 100 of the Transcript:

27. The attorneys for the 2 Chinese importers of the damaged coins argued successfully that their shipments of the coins were accepted by the US Mint, that the Mint did test them and decided they are authentic, sent the coins to be melted and the melted metal was used for minting fresh new coins that went into circulation. The Mint also approved the payment and issued a wire transfer. It was at this point that the District Attorneys intercepted and stopped the wire, and claimed that the coins were counterfeit.

28. However, when Judge Sanchez asked US Attorney Intrater what is the position of the Mint as to whether the coins were genuine or not, he admitted he has no idea. However, he insisted that the Chinese importers "fooled" the Mint.

29. The attorneys for the Defendants (the Chinese importers) submitted proof that prior shipments were tested by the Mint and found to be genuine US coins, and that a Report made by the OIG states that Defendant Wealthy Max's one shipment was tested and found that the coins were genuine.

30. Also as to the test which the US Attorney's Office did (not the Mint), the defense attorneys proved that it was never written that the samples were counterfeit and all it said was that .03% of the coins are laced with aluminum and silicone, but in fact all coins that come out of the Mint accumulate traces of aluminum and silicon on the outer part of the coin after coming in contact with things like cash register or vending machines, and that

1  it is only natural that coins that are sent to be sorted in industrial scrap metal machines
2  will accumulate a little more of these tracers.
3
4     31. Also during the hearing, the US Attorney Intrater admitted that it is not true what
5  they wrote in the complaint that all coins imported from China must be coming from
6  counterfeit sources, and it is not true what they wrote that the only source of coins that
7  can arrive in China where US coins can be found is cars that are sent to be scrapped.
8
9     32. Also Mr. Intrater was unable to explain how the general and vague description of
10 forgeries in China actually applied to the particular shipment of the defendants, and he
11 was unable to explain how he will prove forgeries to the jury given that the coins were
12 melted by the Mint, so there is actually no evidence to show to a jury (i.e. spoliation of
13 evidence). In fact, Judge Sanchez told US Intrater that if indeed the melted coins were
14 used to mint new coins, that appears to be an admission by the Government that the coins
15 were indeed not counterfeit, because the Government itself used them to put out into
16 circulation and use by the public.
17
18    33. As stated, within a week US Attorney Intrater announced that the Government
19 was withdrawing its forfeiture case with prejudice.
20
21    34. In a related case where the defendant Wealthy Max was suing the Government for
22 the unpaid shipments, Wealthy Max Limited v. US Treasury, 2:15-cv-05875-WB before
23 the Hon. Judge Wendy Bettelestone, for additional shipments worth $3.25 Million for
24 coins that were detained in the Ports of Los Angeles and New York.
25
26    35. These coins that arrives in L.A. were actually tested by the Government (CBP)
27 and the Report dated Jan. 21, 2015 concluded that "The samples have a broad range of
28 date, mint marks, and their weights and alloy compositions are indistinguishable from
29 standard currency". The coins that arrived in NYC were Dollar coins and they were also
30 tested on February 10, 2015, and the same language was written in that report.
31

36. Nevertheless, all demands to remit back the detained coins were unanswered by the CBP.

37. One year and 4 months after the filing of the complaint, the attorneys for Wealthy Max notified the court on March 1, 2017 that the US Government paid fully for 2 shipments and was going to pay for the 3rd in 30 days in full.

38. I believe the two cases, One Black Porsche and Wealthy Max show that all possible arguments of the US Government that the shipments from China are counterfeit, or connected to some criminal activity, were already litigated at length and have finalized in an embarrassing defeat to the US Attorney Offices that launched them.

39. At the One Black Porsche hearing the Chinese importers attorneys presented to the Hon. Judge Sanchez a report of the OIG from an investigation that started in 2008 of a 21-month long investigation. It is The OIA (Office of Inspector General) Report of Mint's Mutilated Coin Redemption Program, 2/16/2010.

40. The summary of that OIG Report appears at the web site of Coinworld.com. Here is the excerpt:

> **Agents from the Treasury Office of Inspector General, U.S. Secret Service, and Immigration and Customs Enforcement, along with Mint representatives, on July 15, 2008, inspected the delivery from three foreign companies of suspected mutilated coins contained in 37 crates on three tractor-trailer trucks.**
> **The Treasury Office of Inspector General's Feb. 16, 2010, report did not identify the three companies nor the number of coins in the crates. Of the 37 crates, 11 were randomly selected, and the contents dumped onto a vibratory conveyor belt for coin inspection.**

> **Very few cents and 5-cent coins were found, while approximately 99 percent were dimes and quarter dollars. Two-thirds of the total coins submitted did not appear to be mutilated or damaged.**
> **A Mint metallurgist examined 50 samples from each of the 11 crates inspected and confirmed the contents were genuine U.S. Mint coins.**

41. See Coin World, Mint Adopts Mutilated Coin Redemption Program Changes, September 16, 2011, available at https://www.coinworld.com/news/precious-metals/mint-adopts-mutilated-coin-redemption-program.html.

42. Once again, this OIG Reports negates all possible claims that the coins seized from me were counterfeit, and I believe that the detentions and requests for warrants were made without probable cause, and without *bona fide*.

### FIRST CAUSE OF ACTION : 8 U.S. Code § 1346 Rule 14 (g) FRCP

43. Plaintiff repeats all above allegations.

44. Plaintiff believes that Defendant US Mint enjoyed the benefits of this shipment by melting the coins into metals, and using them in the coinage of new coins, thereby saving itself the costs of raw materials.

45. Plaintiff emphasizes that it is totally and utterly non economical to forge small value coins, because the amount of resources it takes to change the appearance of each coins to have different erosion, use or mutilation features.

46. Upon information and belief, the US Government never found even one factory in China that is suspected of forging small value coins.

47. Moreover, there was no probable cause whatsoever to detain or seize the shipment. Plaintiff believes that the Mint, Customs and SS have been racially profiling Chinese importers, without any real concrete evidence of engaging in criminal activity of disseminating forged coins.

48. Upon information and belief, the defendants devised a policy or protocol of operations placing a blanket re alert on all shipments from China, based on the Hong

Kong CBNI Declaration that it digitally transmitted to them, and lets them of incoming shipments of physical currency and negotiable bearer money bills, from shippers whose name and corporations were placed on a black list/red flag, regardless of any evidence of forgery and criminality with intent to cause damage by first seizing the coins and then letting the shippers bleed in attorney fees and the pains of procrastination. It was their hope the word would spread that Mint and Customs are implementing zero tolerance and making it not worthwhile to even try to ship coins.

49. None of the persons placed on the black list received any advance warning of such plan to eradicate the imports, despite years of business with the Mint with not a single shipment caught with forged content.

50. Defendants also implemented a policy or protocol of deliberate procrastination in handling the "investigation", in sending samples to a laboratory test, in responding to the shippers, and this policy of procrastination repeated itself when litigations were filed against the Mint.

51. Plaintiff is entitled to return of all the property (the coins) or its equivalent in cash, in the amount of $132,000, plus interest from 1/20/2029, plus lost profits in the amount of $132,000, plus damages for the unlawful seizure and the unlawful retainer of the property for more than 5 years, plus interest, in the amount of $50,000, plus attorney fees and costs and disbursements, in the aggregate sum of $314,000.

## SECOND CAUSE OF ACTION: Bivens

52. Plaintiff repeats all above allegations.

53. Plaintiff and his partner have been discriminated against on the basis of their Chinese race, by being placed on a Customs black list, not for having been personally suspected of ever exporting to the USA forged coins, but rather because of blanket restrictions placed on any and all Chinese exporters, by guilt-association with factories that don't exist that allegedly produce forged coins.

54. Such racial profiling is in violation of the Fifth Amendment and the right to sue is implied from the Due Process Clause in the 5th Amendment. The 4th Amendment protects from unreasonable search and seizure.

55. The discrimination festers on stereotypes that China is a lawless country, where the Chinese are ready to fake and forge anything under the sun, and that the authorities in China turn a blind eye to it.

56. Such discriminatory practices have violated the right to be from illegal and unreasonable seizures of property, under color of law, as recognized by Bivens, thereby created a federal question and a federal right of action under 28 U.S.C. § 1331(a). See, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U. S. 388; *Butz v. Economou*, 438 U. S. 478. Pp. 442 U. S. 233-249.

57. Plaintiff has no other remedy.

58. Upon information and belief the federal employee acted under color of law, violated Plaintiffs 4th and 5th Amendment rights and is therefore entitled to recover $314,000.

### 3rd CAUSE OF ACTION (NEGLIGENCE AND CONVERSION)

59. The US Government or its agents were negligent towards the Plaintiff, and converted from his the property described above.

60. The negligence included falsely branding him as a suspect of importing counterfeit coins, negligence in not sending agents to China to the factory of origin to inspect the facilities where the coins come from, negligence in developing relationships with the competitor from Los Angeles "Mr. Lawrence S. Goldberg, President of Ira & Larry Goldberg Coins & Collectibles, located at 11400 W. Olympic Blvd., Los Angeles, California" who deliberately supplied the Government with false and self-interested information, negligence in not testing prior shipments of other importers in metallurgical tests that are standard and scientifically accepted in the community of experts, negligence

in issuing a warrant and orchestrating an ostentatious raids, negligent in not immediately testing the coins collected by a reliable and preferably neutral laboratory, negligence in operating a lab not according to Daubert procedures, negligent in placing plaintiff on a Customs black list, negligence in notifying banks that Plaintiff is involved in criminal forgeries, negligence in obtaining real "probable cause" because seizures or detainer of coins from China, and negligent in relying on dubious sources.

61. Plaintiff is therefore entitled to recover all property seized from him, or its value plus damages and attorney fees.

## 4th CAUSE OF ACTION (Declaratory relief)

62. Upon information and belief, Defendants placed Plaintiff on a blacklist with US banks and financial institutions, therefore preventing Plaintiff from doing various aspects of business with American businesses via an American Bank.

63. Plaintiff is entitled to a declaratory judgment that all property seized or detained from his possession (as described in this case) was not counterfeit, that Plaintiff did not engage in illegal acts, and to an order directing the US defendant to remove Plaintiff from all the blacklists it maintains regarding counterfeit coins, as well as notify all 3rd parties outside the Government, (such as various Banks who also received "Do not do Business With" notices) that the original communications associating Plaintiff with a network of forgers of coins, were ultimately determined to be mistaken.

## 5th CAUSE OF ACTION V. LARRY GOLDBERG (Misrepresentation and Slander)

64. Upon information and belief, as the officers at the port of entry are trained to do once a shipment is detained, a handful of samples are brought to the shop of Larry Goldberg. He is asked to tell them upon looking and feeling the coins if they are authentic US Mint coinage, and he receives a fee for the service. Golberg automatically tells the Government Officers that the coins are forged.

13

65. Upon information and belief, a handful of coins were brought to Goldberg on February 3, 2020 or within a few days thereafter and he said the coins are forged.

66. Needless to say, that no real expert would dare to give an opinion without testing the coins, and without cutting the coins in half to see and inspect the layers of different metals composing the coins.

67. Defendant Goldberg falsely misrepresented that he is an expert and falsely represented that the coins subject matter of this action were fake. He knew or should have known that he is not skilled and lacks the machinery to test the coins, yet he was motivated by personal gains, the wholesale referrals of expert opinions for a fee, and an immunity from seizures if he, or his friends, chose to import from China.

68. Defendant Goldberg's misrepresentation, which is essential slander about Plaintiff's business) is the proximate cause of Plaintiffs damages.

69. Plaintiff is entitled to recover from Goldberg the amount of $314,00.

WHEREFORE, Judgment should be entered ordering the US Government to return the property or its value (in case the coins were melted) with damages, all in the amount of $314,000, plus attorney fees, costs and disbursements.

Dated: Barcelona, Spain
       June 16, 2025

Lang Yu, Plaintiff pro se
100 Carrer de Mallorca, Barcelona
08029 Spain
Tel. +86-13870557350, email: 563907914@qq.com

Addresses of Defendants

US Mint
801 9th Street, NW, Washington, DC 20220

1. DHS Homeland Security
2. Office of the Executive Secretary
3. MS 0525 Department of Homeland Security
4. 2707 Martin Luther King Jr Ave SE
5. Washington, DC 20528-0525
6. Tel. 202-406-9330, email: private.sector@dhs.gov.
7. 
8. Pete R. Flores
9. Office of Chief Counsel
10. U.S. Customs and Border Protection
11. 1300 Pennsylvania Avenue, Suite 4.4-B
12. Washington, D.C. 20229
13. Email: cbpserviceintake@cbp.dhs.gov.
14. 
15. Larry Goldberg
16. c/o GOLDBERG COINS & COLLECTIBLES INC.
17. 11400 W. Olympic Blvd., Suite 800, Los Angeles, CA 90064
18. Tel. 310-551-2646, email: info@goldbergcoins.com.
19.







**This envelope is only for FedEx Express® shipments.**

You can help us get your package safely to its destination by packing your items securely. Need help? Go to **fedex.com/packaging** for packing tips.

Check your FedEx shipping document, the current FedEx Service Guide, or the conditions of carriage for complete terms, conditions, and limits of liability.

© 2025 FedEx 155475/155476 REV 2/25

PAP 21



Please recycle. See how we are connecting the world in responsible and resourceful ways at **fedex.com/sustainability**. Recycling options may vary by location.

▼ Insert shipping



Scan to learn how we can help make Earth a priority together.