UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANG YU,<br><br>            Plaintiff,<br>    v.<br>U.S. MINT, ET AL.,<br><br>            Defendants. | No. 2:25-cv-10366-MRA-AJR<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

## I.

## INTRODUCTION

On October 24, 2025, *pro se* Plaintiff Lang Yu ("Plaintiff") filed a Complaint (the "Complaint") alleging various claims against the following defendants: (1) the U.S. Mint; (2) U.S. Customs and Border Protection ("CBP"); (3) Pete R. Flores, Acting Commissioner of CBP, sued in his individual and official capacities; (4) and coin appraiser Larry Goldberg, sued in his individual capacity (collectively,

"Defendants"). (Dkt. 1 at 2-3.)[1] Plaintiff asserts causes of action for: (1) violation of "8 U.S.C. § 1346" and "Rule 14 (g) FRCP"; (2) constitutional violations under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) ("Bivens"); (3) negligence and conversion; (4) declaratory relief; and (5) misrepresentation and slander. (Dkt. 1 at 10-13.) The Court has screened the Complaint and determined that the Complaint must be dismissed with leave to amend, for the reasons set forth below.

## II.
## PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT

In the Complaint, Plaintiff alleges that he and his now-deceased business partner, Billy Xu, operated a business importing U.S. coins recovered from recycling factories in China. (Id. at ¶¶ 1, 2, 13.) According to Plaintiff, the coins were retrieved from dumpsters and metal recycling facilities and imported to the U.S. for redemption at banks and coin-collecting machines. (Id. at ¶ 13.) Plaintiff alleges that on or about January 9, 2020, he and Mr. Xu arranged for a shipment of nine cases of U.S. coins, valued at approximately $132,000, from Hong Kong to Long Beach, California. (Id. at ¶¶ 1, 10.) The shipment departed Hong Kong on January 21, 2020, with an estimated arrival date of February 3, 2020, and Mr. Xu was listed as the intended recipient. (Id. at ¶ 10.) Plaintiff asserts that all Hong Kong export requirements and procedures were satisfied. (Id. at ¶ 11.)

Plaintiff alleges that upon the shipment's arrival at the Port of Long Beach on or about February 3, 2020, CBP provided coin samples to Larry Goldberg for examination. (Id. at ¶ 12.) Based on Goldberg's belief that the coins were counterfeit, Plaintiff contends that CBP seized the nine cases of coins without

---

[1] For ease of reference and clarity, the Court cites to the CM/ECF pagination on the top of each page.

probable cause.  (Id.)

Plaintiff asserts five causes of action.  In Claim One, Plaintiff alleges that U.S. Mint "enjoyed the benefit" of the seizure by melting the coins and using the recovered metal in the production of new coinage, thereby avoiding raw-material costs, in violation of "8 U.S.C. § 1346" and "Rule 14 (g) FRCP."  (Id. at 10.)  Plaintiff also alleges that U.S. Mint and CBP engaged in racial profiling of Chinese importers and instituted a policy or protocol placing a blanket alert on all shipments from China based on Hong Kong currency declarations transmitted to their system, maintaining what Plaintiff characterizes as a "blacklist."  (Id. at ¶¶ 47-48.)

Similarly, in Claim Two, Plaintiff alleges that he and Mr. Xu were discriminated against based on their Chinese race and placed on a CBP blacklist, in violation of the Fifth Amendment's due process protections and the Fourth Amendment's prohibition against unreasonable searches and seizures pursuant to Bivens.  (Id. at ¶¶ 53-54, 56, 58.)

In Claim Three, Plaintiff alleges negligence by the "United States and its agents."  (Id. at ¶ 59.)  Plaintiff asserts, among other things, that government officials falsely labeled him a suspect in a counterfeit-coin scheme; failed to inspect the factory of origin in China; improperly developed a relationship with his competitor, Larry Goldberg; failed to test prior shipments of other importers; orchestrated a dramatic and unnecessary raid; failed to have the coins tested promptly by a neutral laboratory; operated a lab that purportedly did not comply with Daubert standards; falsely notified banks that Plaintiff was involved in criminal activity; and relied on "dubious sources" in forming probable cause.  (Id. at ¶ 60.)

In Claim Four, Plaintiff seeks declaratory relief that the seized coins were not counterfeit and that he did not engage in criminal conduct, and an injunction requiring Defendants to remove his name from the alleged blacklist.  (Id. at ¶¶ 62-63.)  Finally, in Claim Five, Plaintiff alleges misrepresentation and slander against Larry Goldberg, asserting that Goldberg falsely claimed the coins were counterfeit

and misrepresented his own expertise as a coin appraiser.  (Id. at ¶¶ 64-68.)

Plaintiff seeks the return of the nine seized cases of coins or payment of their alleged value of $132,000, plus interest, nominal damages, and attorney's fees in the aggregate amount of $314,000.  (Id. at ¶¶ 51, 58, 61, 69.)  Plaintiff also separately seeks $314,000 in damages from Larry Goldberg.  (Id. at ¶ 69.)

## III.

## STANDARD OF DISMISSAL OF *PRO SE* COMPLAINT

Under Federal Rule of Civil Procedure 12(b)(6), a trial court may dismiss a claim *sua sponte* "where the claimant cannot possibly win relief."  Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987); see also Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990) (*per curiam*) (adopting the Ninth Circuit's position in Omar and noting that such a *sua sponte* dismissal "is practical and fully consistent with plaintiff's rights and the efficient use of judicial resources").  The Court's authority in this regard includes *sua sponte* dismissal of claims against defendants who have not been served and defendants who have not yet answered or appeared.  See Abagnin v. AMVAC Chem. Corp., 545 F.3d 733, 742-43 (9th Cir. 2008); see also Reunion, Inc. v. F.A.A., 719 F. Supp. 2d 700, 701 n.1 (S.D. Miss. 2010) ("[T]he fact that [certain] defendants have not appeared and filed a motion to dismiss is no bar to the court's consideration of dismissal of the claims against them for failure to state a claim upon which relief can be granted, given that a court may dismiss any complaint *sua sponte* for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6).").

Moreover, when a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt.  See Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 623 (9th Cir. 1988).  In giving liberal interpretation to a *pro se* complaint, the court may not, however, supply essential elements of a claim that were not initially pled.  See Pena v.

4

Gardner, 976 F.2d 469, 471-72 (9th Cir. 1992). A court must give a *pro se* litigant leave to amend the complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Karim-Panahi, 839 F.2d at 623 (internal quotation marks omitted).

## IV.

## DISCUSSION

### A. The Complaint Violates Federal Rule Of Civil Procedure 8.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Smith v. City & Cnty. of Honolulu, 887 F.3d 944, 951 (9th Cir. 2018) (quoting Fed. R. Civ. P. 8(a)(2)). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint violates Rule 8 if a defendant would have difficulty responding to the complaint. Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011). Conclusory allegations are insufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 686 (2009).

Here, Plaintiff's allegations in the Complaint fail to comply with Rule 8. Plaintiff intersperses allegations regarding the coin-import business, alleged CBP racial profiling, alleged wrongdoing by private actor Larry Goldberg, negligence by unidentified government officials, an alleged government "benefit" from melting seized coins, and constitutional violations, without clearly identifying what each Defendant allegedly did, when they did it, or how those actions support any specific cause of action. The pleading is further obscured by Plaintiff's extensive recitations of other unrelated coin-import and counterfeit-coin enforcement cases, which span multiple paragraphs and appear to be included for analogy or background. (Dkt. 1 at ¶¶ 16-42.) These lengthy discussions of wholly separate cases make it difficult to

discern which allegations pertain to Plaintiff's shipment, which pertain to different cases, and which allegations support each cause of action. (See id.)

Plaintiff also cites to "8 U.S.C. § 1346" and "Rule 14 (g) FRCP," which do not exist.[2] (Id. at 10.) These citations further contribute to the Complaint's lack of clarity and fail to place Defendants on notice of the legal theories underlying Plaintiff's claims. As pled, the Complaint does not clearly state "who is being sued, for what relief, and on what theory." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996). Accordingly, the Complaint violates Rule 8 and is dismissed on this basis alone. In addition to violating Rule 8's pleading requirements, the Complaint also fails to state a claim for relief against any defendant, as explained further below.

**B.   Plaintiff's Cited Statutes And Rules Must Be Dismissed (Claim One).**

As discussed above, Plaintiff's first cause of action relies on "8 U.S.C. § 1346" and "Rule 14 (g) FRCP." (Dkt. 1 at 10.) Plaintiff's reliance on these provisions is misplaced because no such statute or procedural rule exists. Further, to the extent Plaintiff intended to invoke Federal Rule of Civil Procedure 14, that rule governs third-party practice and does not create substantive rights or provide an independent cause of action. Accordingly, Claim One must be dismissed.

**C.   Plaintiff's *Bivens* Claims Against The U.S. Mint, CBP, And Pete Flores In His Official Capacity Are Barred, And The Individual Capacity Claim Against Flores Fails As A Matter Of Law (Claim Two).**

As set forth below, Plaintiff's Bivens claims against the U.S. Mint, CBP, and Pete Flores in his official capacity are barred by sovereign immunity. Additionally, Plaintiff's Bivens claim against Pete Flores in his individual capacity fails to state a claim because there is no Bivens remedy available in this context and Plaintiff has

---

[2] Federal Rule of Civil Procedure 14 governs third-party practice, but does not have a subpart (g). See Fed. R. Civ. P. 14. While there is no 8 U.S.C. § 1346, there is a 28 U.S.C. § 1346, which creates jurisdiction over the United States in civil actions. See 28 U.S.C. § 1346.

not alleged Flores's personal involvement. Accordingly, Claim Two must be dismissed.

### 1. Claims Against The U.S. Mint, CBP, And Pete Flores In His Official Capacity Are Barred By Sovereign Immunity.

Under limited circumstances, Bivens permits damages claims against federal officials in their individual capacities for constitutional violations committed under color of federal law. See Bivens, 403 U.S. at 397. However, Bivens does not authorize suits against the United States or its federal agencies. See Corr. Services Corp. v. Malesko, 534 U.S. 61, 72 (2001); id. at 70-71 (explaining that because the "purpose of Bivens is to deter individual federal officers from committing constitutional violations," the "deterrent effects of the Bivens remedy would be lost" if the Court "were to imply a damages action directly against federal agencies"). Consistent with this principle, "no Bivens-like cause of action is available against federal agencies or federal agents sued in their official capacities." Ibrahim v. Dept. of Homeland Sec., 538 F.3d 1250, 1257 (9th Cir. 2008).

Here, Plaintiff names the U.S. Mint and CBP as defendants in the Complaint. (Dkt. 1 at ¶¶ 3-4.) "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1993). Neither the U.S. Mint nor CBP has waived sovereign immunity for constitutional tort claims. See Rivera v. United States, 924 F.2d 948, 951 (9th Cir. 1991); Thomas-Lazear v. Fed. Bureau of Investigation, 851 F.2d 1202, 1207 (9th Cir. 1988). The doctrine of sovereign immunity therefore bars Plaintiff's constitutional claims for damages against these federal agencies.

Likewise, sovereign immunity bars constitutional claims against federal officials sued in their official capacities, because such suits are treated as suits against the United States itself. See Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997). Plaintiff sues Pete Flores, Acting Commissioner of CBP, in both his official and individual capacities. (Dkt. 1 at ¶ 5.) As official-capacity Bivens claims are

barred by sovereign immunity, Plaintiff cannot pursue a <u>Bivens</u> claim against Pete Flores in his official capacity. Accordingly, Plaintiff's <u>Bivens</u> claims against the U.S. Mint, CBP, and Pete Flores in his official capacity must be dismissed.

### 2. Claims Against Pete Flores In His Individual Capacity Fail To State A Cognizable Claim.

Although sovereign immunity bars the official capacity claims against Pete Flores, Plaintiff also sues Flores in his individual capacity. As explained below, the individual-capacity <u>Bivens</u> claim likewise fails because no <u>Bivens</u> remedy is available in this context and Plaintiff has not alleged Flores's personal involvement.

#### a. No <u>Bivens</u> Remedy Is Available.

The Supreme Court has recognized only three categories of implied causes of action for damages against federal officers for constitutional violations under <u>Bivens</u>: (1) a Fourth Amendment unreasonable search and seizure claim under <u>Bivens</u>, 403 U.S. at 397; (2) a Fifth Amendment employment discrimination claim by a congressional employee under <u>Davis v. Passman</u>, 442 U.S. 228, 245 (1979); and (3) an Eighth Amendment deliberate indifference to serious medical needs claim under <u>Carlson v. Green</u>, 446 U.S. 14, 20 (1980). "These three cases—<u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 131 (2017); <u>see also</u> <u>Harper v. Nedd</u>, 71 F.4th 1181, 1185 (9th Cir. 2023) (Following <u>Carlson</u>, "[t]he Supreme Court has never recognized another <u>Bivens</u> claim in the last 43 years.").

The Supreme Court has since scaled back on <u>Bivens</u>, holding that "expanding the <u>Bivens</u> remedy is now a 'disfavored' judicial activity." <u>Ziglar</u>, 582 U.S. at 135. Indeed, the Supreme Court recently observed: "While our cases describe two steps" – namely, whether "the case presents a new <u>Bivens</u> context" and the "special factors indicate that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed" – "those steps often

8

resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." Egbert v. Boule, 596 U.S. 482, 492 (2022) (internal citations and quotation marks omitted). If there is even a "single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." Id. (internal quotation marks omitted).

When presented with a proposed Bivens claim, the Court must undertake a two-step inquiry. See Hernandez v. Mesa, 589 U.S. 93, 102 (2020). First, the Court must ask whether the case presents a new Bivens context, which boils down to whether the case is meaningfully different from Bivens, Davis, and Carlson. See id. If the case presents no meaningful difference (and thus no new context), the analysis ends there and relief under Bivens is available. Id. If, however, the Court decides that the case does present a new Bivens context, its next and final question is whether there are any "special factors" counseling against extending Bivens. Id. The Supreme Court clarified in Egbert that the second part of this analysis essentially boils the entire analysis down to a single question: "whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" Egbert, 596 U.S. at 496 (quoting Ziglar, 582 U.S. at 136). If there is even a "single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." Id. at 492 (internal quotation marks omitted).

Here, as to the first step, Plaintiff's allegations concern CBP's allegedly unreasonable search and seizure of imported coins, discriminatory application of customs-inspection procedures, and enforcement of duties at a port of entry. (Dkt. 1 at 11-12.) This context is meaningfully different from the warrantless domestic home search and arrest in Bivens, the congressional-staff gender discrimination claim in Davis, or the prisoner medical care claim in Carlson. Courts consistently hold that CBP searches, seizures, and border-enforcement operations present a new Bivens context because border-security and immigration-enforcement activity differs

fundamentally from traditional domestic law enforcement.  See, e.g., Egbert, 596 U.S. at 494 (declining to extend Bivens to a Fourth Amendment excessive force and First Amendment retaliation claims against a CBP agent who was carrying out Border Patrol's mandate to "interdic[t] persons attempting to illegally enter or exit the United States or goods being illegally imported into or exported from the United States," an area "intimately related to foreign policy and national security" (internal quotation marks omitted)); Hernandez, 589 U.S. at 96 (holding that "a claim based on a cross-border CBP shooting arises in a context that is markedly new" and meaningfully different from Bivens because it has "foreign relations and national security implications"); Johnson v. United States, 2020 WL 3976995, at *4 (S.D. Cal. July 14, 2020) (declining to extend Bivens to Fourth Amendment unreasonable force and seizure claims against CBP officers charged with enforcing immigration and customs statutes and regulations at the border).  Accordingly, Plaintiff's claim presents a new Bivens context.

   Because the claim is a new context, the Court must proceed to the second step and ask whether any "special factors" counsel hesitation before extending a Bivens judicial damages remedy.  Although Egbert instructs that the two-step inquiry "often resolves to a single question"—whether Congress is better suited to create a damages remedy, the Ninth Circuit continues to apply the two-step framework.  See Egbert, 596 U.S. at 492; Stanard v. Dy, 88 F.4th 811, 816 (9th Cir. 2023).  Here, several special factors counsel hesitation.  First and foremost, the Supreme Court has expressly refused to extend Bivens in cases involving CBP activities because such claims implicate sensitive national-security, border control, and foreign-relations interests.  See Egbert, 596 U.S. at 494; Hernandez, 589 U.S. at 103.  The district courts have also followed suit.  See, e.g., Medina v. Danaher, 2020 WL 1333094, at *5 (D. Colo. Mar. 23, 2020) (refusing to extend Bivens to immigration-enforcement operations in light of national-security and foreign-policy considerations).

   Moreover, Congress has also enacted a comprehensive statutory and

administrative framework governing customs inspections, seizures, and forfeiture procedures, indicating the Legislature, not the Judiciary, is better positioned to determine whether a damages remedy should exist. See Ziglar, 582 U.S. at 137 (holding that courts may not create a Bivens remedy where Congress has crafted its own remedial structure); Egbert, 596 U.S. at 493 ("If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new Bivens cause of action.") (internal quotation marks omitted).  Accordingly, because multiple reasons to hesitate are present, and even one would suffice, Bivens cannot be extended to Plaintiff's claim.

### b. Plaintiff Fails To Allege Flores's Personal Involvement.

Even if a Bivens remedy were available in this context--which it is not--Plaintiff's claim also fails because the Complaint does not allege any facts showing that Flores personally participated in the alleged constitutional violation.  A Bivens claim may proceed only if the complaint alleges facts showing that the individual federal officer personally participated in the alleged constitutional violation.  See Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").  "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Id.; see also Ziglar, 582 U.S. at 140 ("[A] Bivens claim is brought against the individual official for his or her own acts, not the acts of others.").
Here, the Complaint contains no factual allegation describing any personal act or omission by Pete Flores himself.  The only allegation referencing Flores is Plaintiff's assertion that, as Acting Commissioner of CBP, he is "responsible for all seizure activities in the ports of entry."  (Dkt. 1 at ¶ 5.)  This allegation reflects only Flores's supervisory role and fails to identify any personal participation in the inspection, seizure, evaluation, or alleged profiling at issue.  Allegations that a federal official

11

held a supervisory position or bore general responsibility for agency operations fail to state a viable Bivens claim. See Iqbal, 556 U.S. at 676. Accordingly, Plaintiff's Bivens claim against Flores in his individual capacity must be dismissed. In sum, Plaintiff's Bivens claims against the U.S. Mint, CBP, and Pete Flores in his official and individual capacities must be dismissed.

### E. Plaintiff's Negligence And Conversion Claim Fails For Lack Of Exhaustion (Claim Three).

Plaintiff's third cause of action alleges negligence by "the United States and its agents," including assertions that government officials misidentified him as a suspect in a counterfeit-coin scheme, failed to inspect the originating factory in China, relied improperly on coin appraiser Larry Goldberg, failed to test the coins promptly or through a neutral laboratory, conducted an unnecessary raid, and relied on "dubious sources" in forming probable cause. (Dkt. 1 at ¶ 60.) Liberally construed, Plaintiff's *pro se* Complaint appears to seek relief under the Federal Tort Claims Act ("FTCA").

"The FTCA authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Jachetta v. United States, 653 F.3d 898, 904 (9th Cir. 2011) (quoting 28 U.S.C. § 1346(b)(1)); see also Chang v. United States, 139 F.4th 1087, 1090-91 (9th Cir. 2025). The FTCA requires the plaintiff to first present the claim to the appropriate federal agency and either receive a final denial or allow six months to pass without a final resolution. See 28 U.S.C. § 2675(a); Tritz v. U.S. Postal Serv., 721 F.3d 1133, 1140 (9th Cir. 2013) ("[F]ederal district courts have jurisdiction to hear a plaintiff's tort claim under the FTCA only after the plaintiff has exhausted the claim by submitting it to the appropriate federal agency first."). "The purpose of the FTCA's administrative claim procedure is 'to encourage administrative settlement of claims against the United States and thereby to prevent an unnecessary burdening of the courts.'" Brady v. United States, 211 F.3d 499, 503 (9th Cir. 2000) (quoting

Jerves v. United States, 966 F.2d 517, 521 (9th Cir. 1992)); see also Kwai Fun Wong v. Beebe, 732 F.3d 1030, 1047 (9th Cir. 2013) (The FTCA's exhaustion requirement "reduc[es] court congestion by keeping claims out of court until an administrative agency has had a chance to settle them.").

The claim presentation requirement is a jurisdictional prerequisite to bringing suit under the FTCA and must be affirmatively alleged in the complaint. See D.L. by & through Junio v. Vassilev, 858 F.3d 1242, 1244 (9th Cir. 2017); Gillispie v. Civiletti, 629 F.2d 637, 640 (9th Cir. 1980); Tritz, 721 F.3d at 1140. "'Because the requirement is jurisdictional, it must be strictly adhered to.'" Valadez-Lopez v. Chertoff, 656 F.3d 851, 855 (9th Cir. 2011) (quoting Brady, 211 F.3d at 502); Vacek v. U.S. Postal Service, 447 F.3d 1248, 1250 (9th Cir. 2006) ("We have repeatedly held that the exhaustion requirement is jurisdictional in nature and must be interpreted strictly."); Jerves, 966 F.2d at 519 ("[T]his claim requirement of section 2675 is jurisdictional in nature and may not be waived." (internal quotation marks omitted)).

Here, Plaintiff does not allege that he filed an administrative claim with CBP, the U.S. Mint, the Department of Homeland Security, or any federal agency. Absent such administrative exhaustion, the Court lacks subject-matter jurisdiction over any claim under the FTCA.

**2.     Certain Alleged Torts Are Expressly Barred**.

To the extent Plaintiff alleges that government officials "falsely labeled" him a criminal, notified banks of alleged misconduct, or relied on inaccurate statements about him, those allegations sound in defamation or misrepresentation. (Dkt. 1 at ¶ 60.) The FTCA explicitly excludes claims for "libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h). Such claims are therefore barred even if administrative exhaustion were satisfied. In sum, Plaintiff's negligence and conversion claim fails because Plaintiff has not alleged compliance with the FTCA's administrative exhaustion requirement. Plaintiff is granted leave to amend to

identify the United States as the proper defendant and to allege facts showing compliance with the exhaustion requirement under 28 U.S.C. § 2675(a).

### F. Plaintiff's Claims For Declaratory Relief Fail As A Matter Of Law (Claim Four).

"In <u>Bivens</u>, the Supreme Court provided a judicially-created cause of action for damages arising out of constitutional violations by federal officers." <u>Solida v. McKelvey</u>, 820 F.3d 1090, 1094 (9th Cir. 2016). Accordingly, "money damages is the remedy under <u>Bivens</u>." <u>Id.</u> Similarly, "the only relief provided for in the FTCA is money damages." <u>Westbay Steel, Inc. v. United States</u>, 970 F.2d 648, 651 (9th Cir. 1992) (internal quotations and brackets omitted); <u>Quechan Indian Tribe v. United States</u>, 535 F. Supp. 2d 1072, 1116 (S.D. Cal. 2008) ("The United States waives immunity in FTCA cases for claims against the United States seeking monetary damages."); <u>McAuliffe v. U.S. Dep't of Veterans Affs.</u>, 2007 WL 2123690, at *5 (N.D. Cal. July 23, 2007) ("The FTCA only waives sovereign immunity as to claims for 'money damages' and not for declaratory or injunctive relief." (quoting 28 U.S.C. 1346(b)(1))); <u>Wallace v. United States</u>, 2019 WL 3326027, at *3 (C.D. Cal. May 6, 2019) ("[D]eclaratory relief is improper under the FTCA because the only relief available in a FTCA claim is money damages." (internal quotations omitted)), <u>report and recommendation adopted</u>, 2019 WL 3457124 (C.D. Cal. July 30, 2019), <u>aff'd</u>, 821 F. App'x 854 (9th Cir. 2020).

Here, Plaintiff seeks declaratory relief against the United States and its federal agencies, including declarations that the seized coins were not counterfeit and that he engaged in no criminal conduct, as well as an order requiring Defendants to remove his name from the alleged "blacklist." (Dkt. 1 at ¶¶ 62-63.) These forms of relief would require the Court to compel affirmative government action and are not available under <u>Bivens</u> or the FTCA. Moreover, Plaintiff identifies no waiver of sovereign immunity that would permit declaratory relief against the United States, the U.S. Mint, CBP, or Pete Flores in his official capacity. Absent an express

waiver, sovereign immunity bars such claims. See Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999); FDIC, 510 U.S. at 475. Accordingly, because neither Bivens nor the FTCA authorizes declaratory relief under any circumstance, Claim Four must be dismissed.

### G. Plaintiff's Misrepresentation And Slander Claims Against Larry Goldberg Fail For Lack Of Subject Matter Jurisdiction (Claim Five).

Federal jurisdiction may be alleged either pursuant to 28 U.S.C. § 1331 for actions "arising under the Constitution, laws, or treaties of the United States," otherwise known as "federal question" jurisdiction, or 28 U.S.C. § 1332 as an action "between citizens of different States," otherwise known as "diversity" jurisdiction. Generally, a court has diversity jurisdiction only when there is complete diversity of citizenship among adverse parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a).

Plaintiff's fifth cause of action asserts state-law misrepresentation and slander claims against private actor Larry Goldberg. (Dkt. 1 at 13-14.) Plaintiff alleges that Goldberg resides in California, and that Plaintiff "resides" in China and Spain. (Id. at ¶¶ 2, 6.) Plaintiff seeks $314,000 in damages. (Id. at ¶ 69.) Plaintiff invokes diversity and supplemental jurisdiction. (Id. at ¶ 7.) Plaintiff's allegations are insufficient to establish federal subject-matter jurisdiction for several reasons.

First, the Complaint is indeterminate as to Plaintiff's citizenship, which is required to determine whether diversity jurisdiction exists. Plaintiff's Complaint only alleges that he "resides" in China and Spain. However, "the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not residency." Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). Accordingly, a "natural person's state citizenship is . . . determined by [their] state of domicile, not [their] state of residence." Id. A person is domiciled in a state where they live and intend to remain permanently. See id. "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id.; see also

15

Weible v. United States, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile.").

Plaintiff does not allege where he is domiciled, whether he is a citizen of a foreign state or a U.S. citizen domiciled abroad. This distinction is critical because a U.S. citizen domiciled abroad is a "stateless" citizen for purposes of Section 1332 and therefore cannot invoke diversity jurisdiction at all. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828-29 (1989). Likewise, alleging residency in China or Spain does not establish foreign citizenship under Section 1332(a)(2). Because Plaintiff pleads no fact establishing his actual citizenship or domicile, the Court cannot determine whether diversity jurisdiction exists.

Second, although Plaintiff seeks more than $75,000 in damages, the Court may not assume jurisdiction where the citizenship allegations are incomplete, unclear, or legally insufficient. Federal courts are courts of limited jurisdiction, and Plaintiff bears the burden of establishing that diversity jurisdiction exists. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Finally, even if Plaintiff could establish diversity jurisdiction in an amended complaint, the Court would decline supplemental jurisdiction under 28 U.S.C. § 1367(c). Plaintiff may have viable state-law claims against Larry Goldberg. If Plaintiff had been able to state a viable federal claim, the Court could exercise supplemental jurisdiction over Plaintiff's related state-law claims. 28 U.S.C. § 1367(a); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (*en banc*). However, where a court dismisses "all claims over which it has original jurisdiction," it should decline to exercise supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367(c); Acri, 114 F.3d at 1000 (citing United Mine Workers v. Gibbs,

383 U.S. 715, 726 (1966)).  Thus, because the Court finds the Complaint currently states no viable federal claim, the Court declines supplemental jurisdiction over any related state-law claims.

Accordingly, Plaintiff's misrepresentation and slander claims against Larry Goldberg in Claim Five must be dismissed for lack of subject-matter jurisdiction. Plaintiff is granted leave to amend, but must clearly allege the citizenship of each party and a valid basis for invoking diversity jurisdiction if he seeks to pursue these claims in federal court.

## V.
## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the Complaint is dismissed with leave to amend.  On or before **January 28, 2026**, Plaintiff shall file a First Amended Complaint ("FAC") that attempts to remedy the defects identified above.  If Plaintiff chooses to file a FAC, it should bear the docket number assigned to this case (2:25-cv-10366-MRA-AJR), be labeled "First Amended Complaint," and be complete in and of itself without reference in any manner to the original Complaint or any other document (except any document that Plaintiff chooses to attach to the FAC as an exhibit).  **Plaintiff is encouraged to state his claims in simple language and provide only a brief statement of supporting facts, omitting facts that are not relevant.  <u>Should Plaintiff decide to file a FAC, he is encouraged to utilize the form complaint attached to this Order</u>.**

**Plaintiff is explicitly cautioned that failure to timely file a FAC, or failure to correct the deficiencies described above, may result in a recommendation that this action be dismissed with or without prejudice for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).** Plaintiff is further advised that if Plaintiff no longer wishes to pursue this action, Plaintiff may voluntarily dismiss the action by filing a Notice of Dismissal in

accordance with Federal Rule of Civil Procedure 41(a)(1).  <u>A form Notice of Dismissal is attached for Plaintiff's convenience</u>.

    IT IS SO ORDERED.

DATED:  December 29, 2025

                                                _____
                                                HON. A. JOEL RICHLIN
                                                UNITED STATES MAGISTRATE JUDGE

<u>Attachments:</u>
CV-09, Notice of Dismissal Pursuant to Federal Rules of Civil Procedure 41(a) or (c).
Pro Se 15, Complaint for Violation of Civil Rights (Non-Prisoner).