2:25-cv-10366-MRA-AJR

F I L E D
CLERK, U.S. DISTRICT COURT
2/27/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: ___asi___ DEPUTY

UNITED STATES FEDERAL COURT

FOR THE CENTRAL DISTRICT OF LOS ANGELES

SOUTHERN DIVISION SANTA ANA

---

| | |
|---|---|
| LANG YU, and the YU-XU PARTNERSHIP, | AMENDED COMPLAINT |
| | JURY DEMANDED |
| Plaintiff, | |
| Against | |
| U.S. MINT, US CUSTOMS AND BORDER PROTECTION, | |
| a division of US DEPT. OF HOMELAND SECURITY, and | |
| LARRY GOLDBERG, | |
| Defendants. | |

---

Plaintiff for his complaint alleges and sets forth as follows:

 1.   Based on **FRCP 41(g)** Plaintiff is seeking damages from seizure by the US authorities, Mint and Customs, in tandem, of 9 cases of United States coins, such as dimes, quarters etc., shipped from Hong Kong to Long Beach, California that were seized and detained at the point of entry on the false suspicion that they are forgeries.  The coins were shipped by the partners to the transaction, Plaintiff and his co-partner Mr. Billy Xu, who died shortly after the seizure at the time of Corona, from Corona.  The U.S. Government took the coins and never made any application permitting it to retain the coins. According to **FRCP 41(g) the application for return of the property must be made in the city of the port of entry, which is why this lawsuit is filed in Santa Ana.**

I.   The Parties

 2.    Plaintiff lang Yu is a citizen of China, with domicile in Barcelona Spain,  He is a respected and well esteemed Chinese business man residing in China, and involved in

1

many international transactions, none of which ever were subject to any police investigation. As a side business, for many years Plaintiff formed a partnership with his partner Billy Xu (an American citizen and resident of CA, deceased) to purchase US coins found in Chinese recycling factories where American waste and scarp metals are sent for disposal or recycling. In the process many coins are found as well as other valuables. Plaintiff's address is 100 Carrer de Mallorca, Barcelona, 08029 Spain, Tel. +86-13870557350, email: 563907914@qq.com.

   3. The YU-XU PARTNERSHIP, was a partnership in fact, a de facto partnership between Yu and Xu, for the import of the coins, which was also operated from Barcelona Spain where decision making and investment choices were made. To the best of Lang Yu's knowledge, Yu who died from Corona shortly after the import never had any heirs, and the partnership is also entitled to the return of the coins, or beneficiary thereof.

   4. Defendant US Mint coins American coins and launches the, into the public for use. It used to operate a redemption program whereby dealers brought the coins to its facilities and after inspection, the Mint pays its face value and melts the coins to make new coins. The program has been suspended, on and off, but it is still possible to redeem coins by using the Coinstar machines at supermarkets such as Walmart. The Mint's address is 801 9th Street, NW, Washington, DC 20220.

   5. The US Customs inspects all goods entering the country from overseas, it levies taxes and tariffs on imports and it inspects shipments for contraband. It works closely as the Mint's agents at the point of entry to stop coin shipments from China at the orders received from the Mint. Upon information and belief, the US Customs carries out instructions from the Mint, and the decision making is carried out at the Mint. The exact division id responsibilities is unknown. At the time of the seizure, Mr. Pete R. Flores, was the Acting Commissioner for U.S. Customs and Border Protection (CBP) was responsible for all seizure activities in the ports of entry, including Los Angeles. Address is Office of Chief Counsel U.S. Customs and Border Protection, 1300 Pennsylvania Avenue, Suite 4.4-B, Washington, D.C. 20229, Email: cbpserviceintake@cbp.dhs.gov, and the address is Office of the Executive Secretary MS 0525 Department of Homeland

2

Security, 2707 Martin Luther King Jr Ave SE, Washington, DC 20528-0525. Tel. 202-406-9330, email: private.sector@dhs.gov.

    6.   Defendant Larry Goldstein is an individual residing in Los Angeles, with a shop for numismatics who was an employee or contractor of the mint and Customs, whose job was to supply "probable cause" opinion to justify warrants and seizures.  Goldstein portrays himself as an expert in rare and antique coins and other collectors' numismatics. Upon information and belief, as a side business, he tried to import coins from Chinese factories, so he had an interest to sabotage his competitor's imports.  He was used by the Mint and Customs to supply them with post-seizure "probable cause", by writing notes that coins brought to him for an eye inspection are suspected as forgeries.   His opinions are quack opinions since no one can tell if a coin is forged just by looking at it, without testing it for metallurgical composition.  His address is c/o GOLDBERG COINS & COLLECTIBLES INC., 11400 W. Olympic Blvd., Suite 800, Los Angeles, CA 90064, tel. 310-551-2646, email: info@goldbergcoins.com.

## II.  BASIS FOR JURISDICTION AND VENUE

    7.   Jurisdiction is based on  Rule 41 (g) of the Federal Rules of Criminal Procedure. As between Plaintiff and Goldberg, in addition to him being a necessary party, and supplemental jurisdiction, also diversity exists.
    8.   The jurisdiction under 41 (g) arises since there is no other venue, forum and proceeding where Plaintiffs can raise their claims.  The Government choose to take the property sent to Billy XU and took no action, i.e. no motion was made for the right to retain or hold the coins, or dispose them in any way, and no motion was made to forfeit the coins.  Moreover, the Government did not file any criminal charges for import of forgery coins or for illegal imports into the USA, and more than reasonable time has passed, and the "investigation" was closed.
    9.   Venue is proper in Los Angeles since it is the county where the coins were seized without probable caused by the Mint and Customs, and it is the country of defendant Goldberg's business and dwelling.  Plaintiff believes that secret warrants were issued in

Los Angeles against Bily XU, and that the US Secret Service was also involved in picking this particular shipment for a Customs and Mint seizure.

### III. STATEMENT OF CLAIM

10. On or around January 9, 2020, the partnership, ie. Plaintiff Yu and his partner Xu arranged a shipping to Long Beach, CA via TFI Forwarding (HK) Co Ltd comprising of 9 cases of coins, 6,419 kg of Coins, declared valued $132,000, departing HK on January 21, 2020, ETA Long Beach on Feb,3 2020 with Consignee (recipient) Billy Xu handling the transaction on the American side via DEROKK COLLECTION INC. of 16364 SUMMERSHADE DR., LA MIRADA, CA. 90638, U.S.A., tel.: (714) 882 0660, (214) 642 9458).

11. The partnership, Plaintiff Yu and his partner Xu, complied with all Hong Kong requirements and procedure and made a declaration pursuant to HK "Cross Boundary Movement of Physical Currency and Nearer Negotiable Instruments, Ordinance Chapter 629", known as CBNI Declaration (Currency and Bearer Negotiable Instruments Decl.), CFD Ref. S190829/026/9/0, Bill of Lading 1909LBC002, Container OOLU6444545, dated 8/29/2019.

12. On or about Feb. 3, 2020, upon arrival at the port of Long Beach the coins were seized. As it was learned from other previous cases , Customs officials were instructed to take samples to defendant Larry Goldberg for inspection, it is believed that upon looking at the samples he said they are forged, as he routinely did in many cases beforehand.

13. Throughout 2020-2021 and 2022 Plaintiff has been making phone calls trying to find out who is handling this shipment, but received messages that due to Corona there are no agents assigned, and no ability to track. On or about Nov. 1, 2022 Plaintiff sent a demand on a CBP Form 4609, PETITION FOR REMISSION OR MITIGATION OF FORFEITURES to the CA office of "fines, Penalties and Forfeitures Officers, and received no response. Plaintiff periodically continued to call and was told he will get a response when the caseload allows for it.

14. In order to fight the escalating cost of living and to provide for his family, Plaintiff Yu started exporting from a recycling factory in China U.S. coins that are saved from dumpster and metal recycling shipments to be redeemed in banks and in coin collecting machines. The coins must be paid for in advance to the factories, so if there are any unexpected costs such as extra handling costs and attorney costs, it makes the import completely unprofitable.

15. To the best of Plaintiffs' knowledge, officials at the US Mint decided they no longer want to receive damaged and recycled coins for redemption, and devised strategies to start an "unofficial war" against the importers from China by directing agents of the Secret Service and US Customs to intercept and seize the coins, not just from Plaintiff, but from many other importers (who do much bigger business this way), always using the false and unsupported claim that the coins are "forged" in China and therefore cannot be redeemed for cash in the US. The idea was to make it uneconomical and expensive to fight for the payments of the value of the coins in court.

16. Thus while seizures of coins is regulated under CAFRA, Civil Asset Forfeiture Reform Act of 2000, which provides clear guidelines and deadlines for the retention of seized assets, including due process notifications of the owners and beneficiaries, Mint officials decided to simply ignore CAFRA, not notify anyone about intention to retain seized coins, and simply wait until the owners and beneficiaries go to court, a move that is costly and very long.

17. In all the operations, raids, seizures and warrant applications the US Government never set forth what probable cause it had to suspect that the coins were forged. Although those affected invited the US Mint and its agent to visit China and take a look at the recycling factory there and how the scrap metals are separated, and processed, the US has never done so.

18. In one previous case the US admitted that the seized coins were actually melted by the Mint and used to produce new and fresh American coins, which they would never do if the metallurgical composition was not identical to the US coins components. They

5

filed an expert report which was ludicrous on its base and the Judge in Philadelphia did not believe it. Thereafter other seizures involving same importer (Wealthy Max) the U.S. admitted the seizures were unfounded in evidence and paid in full the value of the coins.

19.     Plaintiff knows that Mr. Goldberg in employed by the Mint in imports arriving at the West coast from a previous case filed in Oregon ("5 Crates") where the shipment was seized in Los Angeles port and taken to a private competitor, Mr. Lawrence S. Goldberg to "certify" based on visual inspection that the coins are forged.  That competitor had an interest to eliminate his competitors and dominate the market.

20. In support of Plaintiffs' claims that there was no proiobable cause to claim that the import was of forgeries, Plaintiffs refer to an OIG report from 2010 after a 21- month long investigation, where no forgeries were found, and to two related cases in Pennsylvania "**One Black Porsche**" and "**Wealthy Max**", where the Mint used fake lab reports about metallurgical testing, that the court rejected and the Mint ended up paying in full coins valued between $5.5-$6 million.  See **US v. One 2014 Black Porsche**, Index No. **2:15-cv-05814-JS.**

21. Plaintiff emphasizes that it is totally and utterly non economical to forge small value coins, because the amount of resources it takes to change the appearance of each coins to have different erosion, use or mutilation features.

22. Upon information and belief, the US Government never found even one factory in China that is suspected of forging small value coins.

23. Moreover, there was no probable cause whatsoever to detain or seize the shipment.  Plaintiff believes that the Mint, Customs and SS have been racially profiling Chinese importers, without any real concrete evidence of engaging in criminal activity of disseminating forged coins.

24. Upon information and belief, the defendants devised a policy or protocol of operations placing a blanket re alert on all shipments from China, based on the Hong Kong CBNI Declaration that it digitally transmitted to them, and lets them of incoming shipments of physical currency and negotiable bearer money bills, from shippers whose

6

name and corporations were placed on a black list/red flag, regardless of any evidence of forgery and criminality with intent to cause damage by first seizing the coins and then letting the shippers bleed in attorney fees and the pains of procrastination. It was their hope the word would spread that Mint and Customs are implementing zero tolerance and making it unworthwhile to even try to ship coins.

25. None of the persons placed on the black list received any advance warning of such plan to eradicate the imports, despite of years of making business with the Mint with not a single shipment caught with forged content.

26. Defendants also implemented a policy or protocol of deliberate procrastination in handing the "investigation", in sending samples to a laboratory test, in responding to the shippers, and this policy of procrastination repeated itself when litigations were filed against the Mint.

27. Plaintiff believes that Defendant US Mint enjoyed the benefits of this shipment by melting the coins into metals, and using them in the coinage of new coins, thereby saving itself the costs of raw materials. The Mint has admitted this practice of melting seized coins from China in previous cases.

28. In support of Plaintiffs claim based on 41(g) Plaintiffs state that the equities are in their favor. The US defendants acted with malice, intent to deprive ownership, intent to bypass legal requirements of CAFRA, failure to notify, failure to follow procedures entitling the retention property seized from the public, and committed wrongs and in common are recognized as negligence and conversion, in bad faith.

29. Also, the failure to start judicial foreclosure and notify Yu-Zu, as CAFRA requires denied Plaintiffs remedies at law, leaving no other jurisdiction but the 41(g) jurisdiction.

30. The US Government or its agents were negligent towards the Plaintiff, and converted from his the property described above, and this negligence is proof that the equities are in favor of Plaintiffs .

31. The negligence included falsely branding Yu and Xu as a suspects of importing counterfeit coins, negligence in not sending agents to China to the factory of origin to inspect the facilities where the coins come from, negligence in developing relationships with the competitor from Los Angeles "Mr. Lawrence S. Goldberg, President of Ira & Larry Goldberg Coins & Collectibles, located at 11400 W. Olympic Blvd., Los Angeles,

California" who deliberately supplied the Government with false and self-interested information, negligence in not testing prior shipments of other importers in metallurgical tests that are standard and scientifically accepted in the community of experts, negligence in issuing a warrant and orchestrating an ostentatious raids, negligent in not immediately testing the coins collected by a reliable and preferably neutral laboratory, negligence in operating a lab not according to Daubert procedures, negligent in placing plaintiff on a Customs black list, negligence in notifying banks that Plaintiff is involved in criminal forgeries, negligence in obtaining real "probable cause" because seizures or detainer of coins from China, and negligent in relying on dubious sources.

32. Moreover, upon information and belief, Defendants placed Plaintiffs Yu and the YU-XU partnership on a black list with US banks and financial institutions, therefore preventing Plaintiffs from doing various aspects of business with American businesses via American Banks.

33. As to Defendant Larry Goldberg, since he was retained by the US Government, wither as an employee or a contractor, he is co-liable with the Government for the damages under Bivens, and the Government is liable for his intentional interference with economic prospects, misrepresentation and slander under *respondiat superior*. Larry Goldberg is not sued "personally" for his activities in the shop where he sells coins. He is sued for whatever opinion he gave the government in return for salary, wages or cash, as it pertains to assisting the Government to seize the coins without compensation, and it asserted that he was motivated by greed, prospects of easy money, and an opportunity to bring coins from China himself without competition, and without his goods being stopped at the US port of entry.

34. Upon information and belief, as the officers at the Los Angeles port of entry are trained to take a small handful of samples to the shop of Larry Goldberg. He is asked to tell them upon looking and feeling the coins if they are authentic US Mint coinage, and he receives a fee for the service. Golberg automatically tells the Government Officers that the coins are forged.

35. Upon information and belief, a handful of coins were brought to Goldberg on or about February 3, 2020 or within a few days thereafter and he "certified" that the coins are not originating from the US Mint (i.e. forged).

36. Needless to say, that no real expert would give such an opinion as to a coin, without testing the coin in a certified lab, and without cutting the coins in half to see and inspect the layers of different metals composing the coins.

37. Defendant Goldberg falsely misrepresented that he is an expert and falsely represented that the coins subject matter of this action were fake. He knew or should have known that he is not skilled and lacks the machinery to test the coins, yet he was motivated by personal gains, the wholesale referrals of expert opinions for a fee, and an immunity from seizures if he, or his friends, chose to import from China.

38. Defendant Goldberg's misrepresentation, which is in essence slander about Plaintiffs' business, is one of the proximate causes of Plaintiffs' damages, and a person "under color of law", he is co liable for illegal seizure.

IV. INJURIES. Value of the coins and lost profits, lost future transactions, and damage to reputation (blacklisting at Customs).

V. RELIEF. Plaintiff is entitled to return of all the property (the coins) or its equivalent in cash, in the amount of $132,000, plus interest from 1/20/2029, plus lost profits in the amount of $132,000, plus damages for the unlawful seizure and the unlawful retainer of the property for more than 5 years, plus interest, in the amount of $50,000, plus attorney fees and costs and disbursements, in the aggregate sum of $314,000. Plaintiffs are also entitled to a declaratory remedy finding that all property seized or detained from his possession (as described in this case) was not counterfeit, that Plaintiffs did not engage in illegal acts, and to an order directing the US defendant to remove Plaintiffs from all the blacklists it maintains regarding counterfeit coins, as well as notify all 3rd parties outside the Government, (such as various Banks who also received "Do not do Business With" notices) that the original communications associating Plaintiff with a network of forgerers of coins, were ultimately determined to be mistaken.

VI. CERTIFICATION AND NCLOSING. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by

9

existing law or by a nonfrivolous argument for extending or modifying existing law; and (3) complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated:  Barcelona, Spain
        Feb. 27, 2026

Lang Yu, Plaintiff pro se
100 Carrer de Mallorca, Barcelona
08029 Spain
Tel. +86-13870557350, email: 563907914@qq.com


Addresses of Defendants

US Mint
801 9th Street, NW, Washington, DC 20220


DHS Homeland Security – address 1
Office of the Executive Secretary
MS 0525 Department of Homeland Security
2707 Martin Luther King Jr Ave SE
Washington, DC 20528-0525
Tel. 202-406-9330, email: private.sector@dhs.gov.

DHS Homeland Security – address 2
Attn: Pete R. Flores, Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, Suite 4.4-B
Washington, D.C. 20229
Email: cbpserviceintake@cbp.dhs.gov.

Larry Goldberg
c/o GOLDBERG COINS & COLLECTIBLES INC.
11400 W. Olympic Blvd., Suite 800, Los Angeles, CA 90064

Tel. 310-551-2646, email: info@goldbergcoins.com.